Carl E. Anderson v. Commissioner. Marjorie A. Anderson v. Commissioner.
Anderson v. Commissioner
Docket Nos. 4377, 4378.
United States Tax Court
1946 Tax Ct. Memo LEXIS 169; 5 T.C.M. (CCH) 473; T.C.M. (RIA) 46135; June 5, 1946
Leo E. Anderson, Esq., 615 Richfield Bldg., Los Angeles, Calif., and Arthur L. Murray, Esq., for the petitioners. Byron M. Coon, Esq., for the respondent. HARLAN
Memorandum Findings of Fact and Opinion HARLAN, Judge: By agreement of the parties these cases are consolidated. Respondent determined deficiencies in the income tax liability of these petitioners for the year 1941 as follows: Carl E. Anderson
$5,400.21
Marjorie A. Anderson
5,400.21
The redetermination desired pertains to the declared deficiency of $5,400.21 which was occasioned by the disallowance by the respondent of a claimed long term capital loss, and by including in petitioners' taxable income an amount received by petitioners from the sale of stock. Thus two questions are presented: (1) Did the petitioners sustain a capital *170 loss in the calendar year 1941 in connection with their Chicago & Northwestern Railway Company common stock because of, (a) the sale of said stock, or (b) its becoming worthless during said year? (2) Did the respondent err in increasing the 1941 taxable net income of each petitioner by the sum of $238.75, the amount received by each of them during that year as the sale price of their shares of common stock of Chicago and Northwestern Railway Company? Findings of Fact Petitioners are husband and wife, residing in Beverly Hills, California. They filed income tax returns for the years 1940 and 1941 with the collector of internal revenue for the sixth district of California. In 1935 the Chicago and Northwestern Railway Co. filed in the United States District Court for the Northern District of Illinois, Eastern Division, a petition in bankruptcy, and in said proceeding sought permission to effect a plan of reorganization pursuant to section 77 of chapter 8 of the Acts of Congress relating to bankruptcy. With full knowledge of the existence of the pendency of this proceeding petitioners, in 1937, purchased 20,000 shares of the common stock of said railway company and during *171 the entire year of 1940 up until December of 1941 they continued to possess stock certificates for 19,100 shares of said stock. The cost of said shares to petitioner was $70,761.26. In June 1936 the debtor railway filed a proposed plan of reorganization and in December 1937 it filed an amended plan of reorganization, both in the District Court and with the Interstate Commerce Commission. In December 1939 the Interstate Commerce Commission filed with the District Court its report and order approving a plan of reorganization and on April 2, 1940, it filed a supplemental report and a supplemental order approving a plan of reorganization. The District Court, on October 12, 1940, approved a plan of reorganization of the debtor railway whereby the common stockholders were excluded from having any financial interest in the railway company. In said proceeding the debtor's statements of assets and liabilities as shown by its books as of October 31, 1940, and December 31, 1940, said statements being filed with the District Court on December 4, 1940, and February 6, 1941, respectively, each indicated an underlying value of approximately $111,000,000 for the outstanding common stock of the debtor, *172 the par value of which was $158,440,330. During the months of October and November, 1940, the debtor and other interested parties filed objections and notices of appeal from the order of approval of the District Court dated October 12, 1940. They also filed motions asking that said plan of reorganization which had been approved by the Court be referred back to the Interstate Commerce Commission. The District Court denied these motions and on June 27, 1941, issued a decree confirming said plan of reorganization. While these motions were pending, and in April 1941, the common stockholders of the defendant railway met and authorized their directors to borrow $20,000 to defray expenses of appeal. In June 1941 the stockholders committee appointed to arrange for this loan from their own members solicited contributions from each stockholder of two cents a share and in the letter of solicitation stated that for each of the sixteen months prior to June 1941 the earnings of the Chicago and Northwestern Railway Company had improved over the corresponding months of the previous year. Petitioners herein contributed $382 to said appeal fund. During June and July 1941 the debtor and certain creditors *173 and intervenors filed appeals to the United States Circuit Court of Appeals from said decree of confirmation and from the overruling of the motion to re-commit to the Interstate Commerce Commission and a transcript of the record in the proceedings was duly prepared and certified to the Court of Appeals for the Seventh Circuit. While this appeal was in process the District Court entered an order authorizing and directing the trustees of the debtor railway to pay the cost of the appeal out of the debtor's assets. In said appeal the judgment of the District Court was affirmed by the Circuit Court of Appeals on February 9, 1942. An attempt was made to take the case to the Supreme Court of the United States by certiorari but that Court declined to consider the case. The stock market price range for common stock of the Chicago and Northwestern Railway Company from 1937 to 1941, inclusive, was as follows: Year
1937
1938
1939
1940
1941
High
6 3/4
1 3/4
1 3/8
3/8
.05
Low
7/8
1/2
1/8
1/8
.05
During 1940 the petitioners, having been informed that the District Court had approved a plan of reorganization of the debtor railway company whereby the *174 common stockholders lost their financial interest in said railway, reported in their separate income tax returns for 1940 that their common stockholdings in said railway had become worthless and claimed a long-term capital loss in the fall of 1941. These returns were checked by the examiner for the respondent and the claimed capital losses were rejected in the following terms: An appeal from the reorganization plan approved by Judge P. Barnes will be heard by the Circuit Court of Appeals in October 1941. It appears no identifiable event occurred during the year 1940 to establish a loss in that year on either the common or preferred stock for Federal income tax purposes and the deduction is accordingly denied. Thereafter, and in December 1941, petitioners advertised said stock for sale in two Los Angeles newspapers and the stock was purchased by one Jack Sprecklin, a Los Angeles agent for the Northern Pacific Railway Company for $477.50, that sum being a price of 2 1/2 cents per share. To complete said sale it became necessary for the petitioners to buy revenue stamps at a cost of five cents per share. Petitioners in their tax returns for 1941 claimed a long-term capital loss *175 for the difference between their base price on this stock and the amount realized at the time of sale. Opinion Petitioners contend that their holding of common stock in the Chicago and Northwestern Railway Company became worthless in 1941, the year in which they claimed their capital loss deduction therefor; that the decree of the U.S. District Court confirming the reorganization plan of said railway was the event by which the worthlessness of the stock became identified; and that if both foregoing claims are untrue, nevertheless they are still entitled to claim a capital loss deduction in 1941 because they sold their stock in that year. Respondent contends that the stock became worthless in 1940; that the decree of the U.S. District Court approving the reorganization plan of said railway was the identifying event; and that therefore no capital loss could have been sustained in 1941. The section of the Internal Revenue Code controlling these cases provides as follows: SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(g) Capital losses. - * * * * *
(2) Securities become worthless. - If any securities *176 (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. * * * The questions involved herein are purely ones of fact. Did these stock become worthless in 1940? If not, did they become worthless or were they disposed of by a bona fide sale in 1941, the taxable year in which the credit for the capital loss was taken? The record discloses that these stockholders, by joint action, backed their faith in the value of their stock at the end of 1941 by assessing themselves $20,000 to defray the expense of the litigation necessary to protect that value. The petitioners contributed $382 to that fund. The judge who had approved the order of reorganization had sufficient regard for the merits of the appeal to permit the payment of the cost of the appeal out of the bankrupt estate. The examiner for the respondent asserted his belief in the value of the stock in 1941. The debtor railroad company's report in 1940 showed the stock as having a book value of $111,000,000. *177 There were actual stock market sales in 1941 in which this stock brought a price of 5!. And finally, the Court of Appeals which disposed of the appellant's claims in February of 1942, by finding that a preponderance of the evidence showed that there was no substantial equity in any of the stockholders, nevertheless made this statement on page 364 of the decision in re : The unusual and extraordinary increases in the revenue of carriers during the last year have made the Commission's [Interstate Commerce Commission] estimate the subject of determined and vigorous attack by the stockholders. This has caused us no end of anxiety and concern. This radical change for the better in the past year cannot and should not be ignored. (Italics supplied.) An examination of this case in the Court of Appeals indicates that the crucial question revolved about whether revenue or replacement value should determine the valuation of the railway company and to what extent present increased earnings and tentative plans for new sources of business should affect the valuation of the railway property. Very obviously this piece of litigation *178 could reasonably have terminated far differently than it did. The petitioners herein advertised and sold their stock in the railway company on December 31, 1941. The respondent questions the bona fides of this sale in his brief. A sale in which the vendor receives less money than the sales cost is a rather unusual event. But the petitioner, in his testimony, very frankly says that he made the sale definitely to settle the date of the realization of his capital loss and under oath he says that the sale was bona fide. One element of the sale that would seem to support this contention, is that the amount received by the petitioners, if the sale were not bona fide, could just as easily have been greater than the cost of the sale as it was less than the cost of the sale. In other words they could, by an arrangement with the vendee, have fixed the price of the stock at five cents a share which was the 1941 market and the expense of the sale would at least have been covered. Petitioners did not do this, which is some evidence of their good faith. The testimony of the petitioners has established a prima facie case showing the validity of this sale and the respondent has introduced no evidence *179 to the contrary. We must therefore find that the sale was bona fide and that the capital loss of the petitioners is controlled by the base price of the stock less the amount received from the sale thereof. It is therefore our finding that the common stock of the Chicago and Northwestern did not become worthless prior to January 1, 1941, and that each of the petitioners herein sustained a deductible loss of $17,570.94 in connection with said stock during the year 1941. Judgment will be entered for the petitioners.